# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | |
|---|---|
| REBECCA HUNT, et al., | ) |
| Plaintiffs, | ) |
| | ) Case No. 99-4158-CV-C-5 |
| v. | ) |
| STATE OF MISSOURI, DEPARTMENT OF CORRECTIONS, et al., | ) |
| Defendants. | ) |

## DEFENDANT STATE OF MISSOURI, DEPARTMENT OF CORRECTIONS' MOTION FOR SUMMARY JUDGMENT

Defendant State of Missouri, Department of Corrections, through counsel, moves this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. There exists no genuine issue of material fact and defendant is entitled to judgment as a matter of law.

## MOTION FOR SUMMARY JUDGMENT

### I.      Introduction

Plaintiffs Rebecca Hunt and Susan Nurnberg were employed by defendant Favorite Nurses, Incorporated, a private corporation. In October 1997, the State of Missouri and Favorite Nurses signed a contract requiring Favorite to provide "employee health nurses" at various Missouri prisons. Pursuant to that agreement, plaintiffs were assigned to work at Jefferson City Correctional Center [JCCC] on a part-time basis beginning in December 1997. Hunt quit working at JCCC on June 30, 1998. Nurnberg quit working at JCCC on July 10, 1998.

Plaintiffs claim that during their tenure at JCCC they were subjected to a sexually hostile work environment in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq*, and the Missouri Human Rights Act, [MHRA] § 213.010 RSMo *et seq*. Plaintiffs also allege

that they were retaliated against after complaining to Corrections' officials about the harassment in violation of Title VII and the MHRA.

## II. Statement of Undisputed Facts

The following undisputed material facts demonstrate no genuine issue of material fact exists that would prohibit this Court from granting defendant State of Missouri, Department of Corrections', motion for summary judgment. While there may remain factual disputes between the parties, such disputed facts are not "material," and even assuming plaintiffs' version of those facts is true, defendant is nevertheless entitled to summary judgment as a matter of law. The uncontested material facts are as follows:

**A. The Parties.**

1. Plaintiffs are Rebecca Hunt and Susan Nurnberg. During the relevant time period, plaintiffs were employed by defendant Leopoldstadt, Inc., dba Favorite Nurses, Inc. [Favorite Nurses],[1] a private company that assigns contract nurses to various worksites throughout the country.[2]

2. Defendants are the State of Missouri, Department of Corrections, and Favorite Nurses.

**B. Procedural History.**

---

[1] Doc. No. 1. at ¶ 13.

[2] Exhibit A (Employee Handbook) at 000135; Exhibit B (MacLeod Depo) at 9-10.

3. On April 27, 1999, the Equal Employment Opportunity Commission issued plaintiffs right to sue letters regarding their claims against defendant and Favorite Nurses.[3]

4. On July 13, 1999, plaintiffs filed their complaint containing claims of a hostile work environment as a result of sexual harassment and retaliation against defendant and Favorite Nurses. Plaintiffs' claims are made pursuant to Title VII and the MHRA.[4]

**C. The Contract Between the State and Favorite Nurses.**

5. In October 1997, the State of Missouri and Favorite Nurses signed a contract requiring Favorite to provide "employee health nurses" to various Missouri prisons.[5]

6. The contract between the State and Favorite Nurses required the "employee health nurses" to provide a minimum of thirty-eight hours of nursing services at JCCC.[6] The nurses were allowed to work out scheduling of the hours between themselves and Julie Ives, RN-V and the Department of Corrections' Employee Health and Safety Coordinator.[7]

7. Pursuant to the contract between the State and Favorite Nurses, the "employee health nurses" were to conduct nursing assessments, diagnose and provide care plans, coordinate an employee health program, conduct TB testing, and other specified nursing activities.[8]

---

[3] Exhibit F.

[4] Doc. No. 1.

[5] Exhibit C (Contract Between State and Favorite Nurses) at 2.1.1.

[6] *Id.* at 2.2.2(a).

[7] Exhibit B (MacLeod Depo) at 21.

[8] *Id.* at 2.2.8 - 2.2.10.

8. The "employee health nurses" were to work "independently with a minimum of supervision" by defendant or defendant's employees.[9]

9. Neither defendant or defendant's employees provided performance evaluations for the "employee health nurses." Favorite Nurses evaluates the "employee health nurses" on a periodic basis.[10]

10. Pursuant to the contract between the State and Favorite Nurses, the only review that defendant or defendant's employees were to provide the "employee health nurses" was a review to ensure "conformance with established nursing policies."[11]

11. Plaintiffs were required, pursuant to the terms of the contract between the State and Favorite Nurses, to undergo background and security checks prior to beginning work in a Department of Corrections' facility.[12]

12. Pursuant to the terms of the contract between the State and Favorite Nurses, the State had sole discretion as to whether the contract would be renewed.[13]

---

[9] *Id*. at 2.2.11.

[10] Exhibit A (Employee Handbook) at 000138.

[11] Exhibit C (Contract Between State and Favorite Nurses) at 2.2.11.

[12] *Id.* at 2.2.12.

[13] *Id*. at 2.4.1.

13. Pursuant to the terms of the contract between the State and Favorite Nurses, specific nurses were to be provided by Favorite to specific Department of Corrections' facilities.[14] Substitutions of personnel could not be made without prior notice and approval.[15]

14. The contract between the State and Favorite Nurses states that "the contractor represents himself or herself to be an independent contractor offering such services to the general public and shall not represent himself/herself or his/her employees to be an employee of the State of Missouri. Therefore, the contractor shall assume all legal and financial responsibility for taxes, FICA, employee fringe benefits, workers compensation, employee insurance, minimum wage requirements, etc . . . . "[16]

15. Pursuant to the Favorite Nurses Employee Handbook, plaintiffs were required to submit their withholding allowance certificate and "form W-4," for income tax purposes, to Favorite.[17]

### D. Employee Benefits Provided Plaintiffs by Favorite Nurses.

16. Don Cline, the Associate Superintendent of JCCC, signed plaintiffs' timecards at JCCC.[18]

---

[14] *Id.* at 2.2.5, 2.4.7.

[15] *Id.* at 2.2.5, 2.4.7.

[16] *Id.* at 2.4.5.

[17] Exhibit A at 000145-000146.

[18] Exhibit E (Ives Depo) at 9.

17. Plaintiffs reported their hours worked to Favorite Nurses.[19]

18. Favorite Nurses paid plaintiffs.[20]

19. Favorite Nurses provides its employees with continuing education expense reimbursement, insurance benefits, a referral bonus, a "cafeteria" or "section 125" tax-savings plan, and a 401k employee savings plan.[21]

20. Favorite Nurses provides its employees with vacation pay based on the number of hours worked.[22]

21. Favorite Nurses provides its employees with overtime pay and holiday pay in certain circumstances.[23]

22. Favorite Nurses' employees may utilize the company grievance procedure.[24] Favorite Nurses also has a sexual harassment policy.[25]

### E. Plaintiffs Assignment to JCCC as "Employee Health Nurses" and Their Claims of Hostile Work Environment and Retaliation.

---

[19] Exhibit B (MacLeod Depo) at 24-25, 30-31; Exhibit A (Employee Handbook) at 000137.

[20] Exhibit B (MacLeod Depo) at 24-25, 30-31; Exhibit A (Employee Handbook) at 000137.

[21] Exhibit A (Employee Handbook) at 000141-000143.

[22] *Id.* at 000142.

[23] *Id.* at 000137.

[24] *Id.* at 000139.

[25] *Id.*

23. As a result of the agreement between the State and Favorite Nurses, plaintiffs were assigned to work part-time at JCCC as contracted "employee health nurses."[26]

24. Nurnberg has been a licensed nurse in Missouri since 1984.[27] Hunt has been a licensed nurse in Missouri since 1989.[28]

25. Plaintiffs began working as "employee health nurses" at JCCC in December 1997.[29]

26. Plaintiffs received photo identification badges at JCCC.[30]

27. JCCC is a maximum-security, Level V prison facility housing dangerous offenders.[31]

28. Dave Dormire, Superintendent of JCCC, was the on-site contact person for plaintiffs.[32]

29. Plaintiffs contacted Julie Ives if they had questions about nursing protocols or had nursing-related questions.[33]

30. Mitch Seaman and Rodney Perry were Fire and Safety Coordinators at JCCC during the time plaintiffs worked as "employee health nurses."[34]

---

[26] Exhibit D (Hunt Depo) at 38-39.

[27] Exhibit G (Nurnberg Depo) at 8.

[28] Exhibit D (Hunt Depo) at 14.

[29] Doc. No. 1 at §§ 14, 53.

[30] Exhibit G (Nurnberg Depo) at 42.

[31] *Id.* at 61.

[32] Exhibit G (Nurnberg Depo) at 40-41.

[33] *Id.* at 50; Exhibit E (Ives Depo) at 10.

[34] Exhibit E (Ives Depo) at 16-17.

31.     Seaman and Perry gave plaintiffs a tour of JCCC on plaintiffs' first two days of working at the facility.[35] Hunt claims Seaman and Perry "paired off" with she and Nurnberg and stayed at her and Nurnberg's side during the tour.[36] Plaintiffs claim Seaman and Perry "leered" at their chests and Hunt's "behind" during the tour.[37] Plaintiffs claim Seaman and Perry stood outside the ladies' restroom while they used the restroom.[38] Seaman made comments to Hunt at various times stating that he liked her clothing.[39]

32.     Plaintiffs did not tell either Seaman or Perry that they were uncomfortable with their presence or behavior during the tour.[40] Nurnberg did not say anything to Seaman and Perry because she was "too polite" and "wanted to really assess what was going on."[41]

33.     Plaintiffs did not file a grievance regarding Seaman and Perry with Favorite Nurses.[42]

34.     Plaintiffs informed Julie Ives during their first week of working at JCCC that Seaman and Perry made them uncomfortable during the tour, and that Seaman and Perry thought they were Hunt and Nurnberg's supervisors.[43] Plaintiffs did not tell Julie Ives that Seaman and Perry were

---

[35] Exhibit D (Hunt Depo) at 59-60.

[36] *Id.* at 60.

[37] *Id.* at 62; Exhibit G (Nurnberg Depo) at 44-45.

[38] Exhibit D (Hunt Depo) at 60-66; Exhibit G (Nurnberg Depo) at 44.

[39] Exhibit D (Hunt Depo) at 83-84.

[40] Exhibit D (Hunt Depo) at 61-62; Exhibit G (Nurnberg Depo) at 45-46.

[41] Exhibit G (Nurnberg Depo) at 46.

[42] Exhibit D (Hunt Depo) at 80-81.

[43] *Id.* at 67; Exhibit G (Nurnberg Depo) at 56-58.

sexually harassing them.[44] Approximately three weeks after meeting with Julie Ives, plaintiffs made a second complaint to Ives.[45] Plaintiffs claim that in their second complaint to Julie Ives they told Ives that Seaman and Perry were sexually harassing them.[46]

35. After plaintiffs' first complaint to Julie Ives, Ives contacted Perry and told the men to "back off" from Hunt and Nurnberg.[47]

36. Plaintiffs allege that they complained to various Department of Corrections officials about Seaman and Perry's behavior, including Major James Eberle, Marvin Cundiff, Dave Dormire, Debra Clay and Alma McKinny.[48] Plaintiffs also filed a complaint with the JCCC Investigator's Office.[49]

37. Perry was in plaintiffs' work area infrequently after they made their first complaint about he and Seaman to Julie Ives.[50] Perry did not harass plaintiffs after they made their first complaint to Julie Ives.[51] Hunt claims that Seaman continued to be "overly friendly" with her and was in the nurses' office "much of the time" after she and Nurnberg complained to Julie Ives.[52]

---

[44] Exhibit D (Hunt Depo) at 83; Exhibit G (Nurnberg Depo) at 57-58.

[45] Exhibit D (Hunt Depo) at 136-137.

[46] *Id.*

[47] Exhibit E (Ives Depo) at 23-28.

[48] Exhibit D (Hunt Depo) at 143-144.

[49] *Id.*

[50] Exhibit D (Hunt's Depo) at 122-123; Exhibit G (Nurnberg Depo) at 61.

[51] Exhibit G (Nurnberg Depo) at 61.

[52] Exhibit D (Hunt Depo) at 122-123.

9

38. Plaintiffs claim that Department of Corrections officials retaliated against them after they complained about Seaman and Perry's behavior. Hunt describes the retaliation as consisting of difficulty in getting their timecards signed; a "petition" against them that circulated at JCCC; and that after she and Nurnberg quit working at JCCC, the pictures from their identification badges and identification number, were circulated "to everyone's view."[53] Hunt also claims that she and Nurnberg's work hours were changed in retaliation for complaining about Seaman and Perry's behavior, that Dave Dormire was no longer friendly to she and Nurnberg, and Dormire walked past the "employee health nurse" office at JCCC several times per day.[54]

39. Hunt also claims that prior to filing their complaint, she and Nurnberg were told that if the "employee health nurse" program at JCCC was successful, she and Nurnberg would become employees of the State of Missouri.[55] But after she and Nurnberg complained about Seaman and Perry's behavior, their becoming employees of the State was no longer discussed.[56]

40. Hunt quit working at JCCC on June 30, 1998.[57]

41. Hunt began working for the State of Missouri, Division of Medical Services, within a "couple of days" after she quit working at JCCC.[58] Hunt's salary at the Division of Medical

---

[53] *Id.* at 84-87, 167-172.

[54] *Id.* at 167-172.

[55] *Id.* at 171-172.

[56] *Id.*

[57] Exhibit H (Letter of Resignation).

[58] Exhibit D (Hunt Depo) at 88.

10

Services was $32,000 per year.[59] She also received a benefit package at the Division of Medical Services.[60]

42. Nurnberg quit working at JCCC on July 10, 1998.[61]

43. Nurnberg began working as a nurse at Lewis and Clark School in Jefferson City on August 23, 1998.[62] Nurnberg brought home $11,500 per year from Lewis and Clark and received health and life insurance benefits.[63]

44. Plaintiffs contacted an attorney in May 1998, before they quit working at JCCC.[64]

45. Favorite Nurses continues to provide "employee health nurses" to the Department of Corrections' facilities, including JCCC, pursuant to the contract between the State of Missouri and Favorite.[65]

---

[59] *Id.* at 25-26.

[60] *Id.*

[61] Exhibit I (Letter of Resignation).

[62] Exhibit G (Nurnberg Depo) at 15-16.

[63] *Id.*

[64] Exhibit D (Hunt's Depo) at 118; Exhibit B (MacLeod Depo) at 38-43.

[65] Exhibit B (MacLeod Depo) at 120.

Respectfully submitted,

JEREMIAH W. (JAY) NIXON
Attorney General


/s/

VIRGINIA HURTUBISE MURRAY
Missouri Bar No. 48770

SARA L. TROWER
Missouri Bar No. 34732

Assistant Attorneys General
P.O. Box 899
Jefferson City, Missouri 65102
Phone: (573) 751-3321
Fax: (573) 751-9456

ATTORNEYS FOR DEFENDANT
STATE OF MISSOURI, DEPARTMENT
OF CORRECTIONS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was mailed, postage prepaid, this 16th day of June, 2000, to: Martin Meyers and Stephen C. Thornberry of The Meyers Law Firm, 2850 City Center Square, 1100 Main Street, Kansas City, Missouri 64105-2112.


_  /s/_____
Assistant Attorney General

12

Case 2:99-cv-04158-NKL   Document 42   Filed 06/16/00   Page 13 of 13