# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

REBECCA HUNT, et al.,                )
                                     )
        Plaintiffs,           )
                                     )    Case No. 99-4158-CV-C-5
    v.                          )
                                     )
STATE OF MISSOURI, DEPARTMENT        )
OF CORRECTIONS, et al.,              )
                                     )
        Defendants.          )

## DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S SUGGESTIONS IN SUPPORT

**I.    This Court Lacks Jurisdiction Because Plaintiffs Were Not Defendant's Employees and Thus Cannot Sue Defendant Pursuant to Title VII**

There is no dispute in this case that plaintiffs were not defendant's employees. Plaintiffs did not refute the factual allegations contained in defendant's motion for summary judgment regarding their independent contractor status. Nor did plaintiffs refute defendant's suggestions regarding their independent contractor status.[1] As a result, the overriding issue in this case is whether plaintiffs can sue defendant pursuant to Title VII and whether this Court has jurisdiction to entertain claims under Title VII brought by independent contractors.

Plaintiffs contend that an individual who is not an employee of the defendant, may bring Title VII claims against the defendant as a third-party, if the defendant arguably interferes discriminatorily with the plaintiff's access to the job market.[2] But plaintiffs admit in their response that the Eighth Circuit has never applied this standard to a Title VII claim. In fact, the Eighth Circuit has never found that an independent contractor may bring a Title VII claim under

---

[1]    Plaintiffs' Reponse at 3-4, ¶¶ 5-22; 28-31.

[2]    Plaintiffs are essentially making a tortious interference claim against defendant under the guise of Title VII. But plaintiffs cannot sue defendant for tortious interference because the State of Missouri is immune from such a claim. *See Coleman v. McNary*, 549 S.W.2d 568 (Mo.App. 1977).

any circumstances. *See Wilde v. County of Kandiyohi*, 15 F.3d 103, 104 (8th Cir. 1994); *Lindquist v. Condra*, No. 97-2833, 1998 WL 403201 at 1 (8th Cir. July 6, 1998) (copy attached).

Instead, as defendant discussed in it's motion, the Eighth Circuit consistently applies a common-law hybrid test in determining whether an individual is an employee or an independent contractor. *See Wilde*, 15 F.3d at 104-06; *Schwieger v. Farm Bureau Ins. Co. of Nebraska*, 2000 WL 298068 at 2 (8th Cir. Mar. 23, 2000) (copy attached to motion for summary judgment). In *Wilde*, the Eighth Circuit disagreed with the proposition that the "broad goals" of Title VII require extension of "coverage to all those who are in a position to suffer the harm the statute is designed to prevent, unless specifically excluded," instead finding that the Supreme Court's opinion in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-27 (1992), requires application of the common-law hybrid test and limits coverage to employees and not independent contractors. *Wilde*, 15 F.3d at 105.

Moreover, although some circuit courts recognize that a plaintiff who is not an employee of the defendant may sue under Title VII if the defendant interferes with the plaintiff's access to the job market, the Seventh Circuit Court of Appeals rejected such an argument in *Alexander v. Rush North Shore Medical Ctr.*, 101 F.3d 487 (7th Cir. 1997), reversing its earlier opinions addressing the issue. In *Alexander*, a physician's staff privileges at a hospital were revoked for allegedly discriminatory reasons. The hospital-defendant claimed that the physician was precluded from bringing a Title VII claim against the hospital because the undisputed facts in the record demonstrated that the physician was an independent contractor rather than an employee of the hospital. *Id*. at 489.

The district court found in *Alexander* that is was unnecessary for the physician to demonstrate an employer-employee relationship with the hospital in order to maintain a Title VII action, instead finding that it was sufficient for the physician to allege the hospital discriminatorily interfered with the "business relationships" he had with his present or potential patients. *Id*. at 490. The District Court's reasoning was based upon *Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir. 1986), in which the Seventh Circuit found that restricting Title VII

coverage to situations involving an employer-employee relationship between the plaintiff and defendant would be "inconsistent with our charge to construe Title VII liberally so as to further the goals and purposes of eliminating discrimination in employment." *Doe*, 788 F.2d at 422.

But the Seventh Circuit expressly overruled *Doe* in *Alexander*, stating that the test of "common law agency principles" should dictate whether "the plaintiff was an employee of the defendant or an independent contractor." *Alexander*, 101 F.3d at 491-92. In other words, the Seventh Circuit now applies the same common-law hybrid test applied by the Eighth Circuit in Title VII cases and, like the Eighth Circuit, also precludes Title VII coverage to independent contractors who are not the defendant's employee. *See id*. at 492-93.

Plaintiffs do not contend that they were defendant's employees. Plaintiffs did not contest the majority of the facts or the suggestions included in defendant's motion for summary judgment regarding their independent contractor status.[3] As a result, plaintiff cannot maintain a Title VII claim against defendant and defendant's motion for summary judgment should be granted.

## II. Even If This Court Applies Plaintiffs' Suggested Standard, Defendant is Entitled to Summary Judgment Because Defendant Did Not Interfere With Plaintiffs' Access to the Job Market

Even if this Court applies those cases cited by plaintiffs in their response, and finds that plaintiff's independent contractor status does not preclude them from suing defendant pursuant to Title VII, defendant is still entitled to summary judgment as a matter of law because plaintiffs failed to present evidence showing defendant "had a sufficient degree of control over plaintiff's access to the job market, i.e., sufficient control over plaintiff's employment opportunities." *Moland v. Bil-Mar Foods*, 994 F.Supp. 1061, 1071 (N.D. Iowa 1998).

In *Moland*, for example, the plaintiff was not an employee of Bil-Mar, the defendant, but instead was an employee of IBP. The plaintiff was assigned to work in Bil-Mar's facility by IBP and was allegedly sexually harassed by a Bil-Mar employee. *Id*. at 1066-67. The court found that the plaintiff could sue Bil-Mar pursuant to Title VII because Bil-Mar interfered with the plaintiff's job opportunities when it recommended to IBP that the plaintiff no longer be assigned

---

[3]     Defendant's Motion for Summary Judgment at 3-6, ¶¶ 5-22.

to work in Bil-Mar's facility. *Id.* at 1067. IBP subsequently told the plaintiff that she would no longer be assigned to work in Bil-Mar's facility due to Bil-Mar's request that she not be assigned there. *Id.* The plaintiff was told by IBP personnel that she would be reassigned to another position, but no positions were made available to her, and one year later the plaintiff's employment at IBP was terminated. *Id.*

Plaintiffs in this case, like the plaintiff in *Bil-Mar*, were assigned to work in a facility and for an entity that was not their employer. But unlike in *Bil-Mar*, neither Favorite Nurses or defendant terminated plaintiffs' employment in this case, or interfered with their access to the job market or their employment opportunities. Nor did defendant contact Favorite Nurses and attempt to have plaintiffs removed from JCCC.

Deborah MacLeod, Vice President of Favorite Nurses, testified that she asked plaintiffs about working at job sites in Kansas City, St. Louis, and the Lake of the Ozarks after she learned plaintiffs were resigning their positions with Favorite.[4] David Lite, Human Resource Director of Favorite Nurses, apparently also wrote Nurnberg a letter dated July 18, 1998, referring Nurnberg for work to one of Favorite's local offices and giving Nurnberg the local office addresses and telephone numbers.[5] MacLeod also testified that Hunt informed her that she, Hunt, had already found another job outside of Favorite Nurses.[6] Hunt testified that her new job was at the Division of Medical Services and she began working there "within a couple of days" of her resignation from Favorite.[7] Both plaintiffs have consistently been employed in the nursing field since they resigned their positions at Favorite Nurses in 1998.[8]

---

[4] Exhibit J (MacLeod Depo attached hereto) at 106-08.

[5] *Id.* at 111-12.

[6] *Id.* at 92.

[7] Exhibit L (Hunt Depo attached hereto) at 88.

[8] Exhibit K (Nurnberg Depo attached hereto) at 12-16; Exhibit L (Hunt Depo attached hereto) at 25-32; 87-88.

Defendant did not interfere with plaintiffs' access to the job market or their employment opportunities. Plaintiffs instead voluntarily ceased working at JCCC, resigned their employment at Favorite Nurses, declined Favorite's offers of reassignment to another job site, began working as nurses elsewhere shortly after their resignations, and have been consistently employed in the nursing field since their resignations. As a result, defendant is entitled to summary judgment even if this Court accepts plaintiffs' contention that they may sue defendant under Title VII without showing they were defendant's employees.

### III.     Plaintiffs' Sexual Harassment and Retaliation Claims

Plaintiffs' response to defendants motion includes a litany of 98 additional fact paragraphs that plaintiffs argue establish a *prima facie* case of sexual harassment and retaliation under Title VII. But as plaintiffs also admit in their response, to avoid summary judgment they must show the alleged harassment affected a term, condition, or privilege of their *employment.* And plaintiffs must also present evidence indicating *their employer* should have known of the harassment and failed to take proper remedial action. *Henderson v. Simmons Foods, Inc.*, No. 99-1914, 2000 WL 772716 at 3 (8th Cir. June 16, 2000). Plaintiffs have not and cannot meet this burden.

First, plaintiffs have failed to show that the alleged harassment affected a term, condition, or privilege of their employment. Initially it should be pointed out once again that plaintiffs admit that their *employment* was with Favorite Nurses and not defendant. Plaintiffs have produced no evidence indicating how defendant forced them to resign their employment with Favorite. In fact, as previously stated, plaintiffs voluntarily resigned and declined Favorite Nurses' offer of reassignment to other job sites. Although the potential reassignments involved out-of-town locations (Kansas City, St. Louis, and the Lake of the Ozarks), it is well established that transfer or reassignment from one city to another is not actionable if the transfer does not entail a change in salary, benefits, or any other aspect of employment. *See Montadon v. Farmland Indus., Inc.*, 116. F.3d 355, 359 (8th Cir. 1997) (transfer from St. Paul to Chicago not an adverse employment action because rank, pay, and other benefits were unaltered).

Second, to the extent plaintiffs claim that a term, condition, or privilege of their employment was affected because they were forced to resign or constructively discharged from Favorite Nurses, plaintiffs fail to show that their working conditions were so intolerable that they were essentially forced to terminate the employment relationship. *See Henderson*, 2000 WL 7772716 at 4. Nor have plaintiffs shown that their admitted employer's actions were "taken with the intention of forcing the employee to quit." *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981). To the contrary, there is no evidence that plaintiffs' employer - Favorite Nurses - forced them to resign their positions, nor do plaintiffs explain how such an action on the part of Favorite is attributable to defendant. And there is no evidence that defendant asked Favorite Nurses to remove plaintiffs from JCCC or otherwise attempted to interfere in plaintiffs' employment with Favorite.

Third, plaintiffs have failed to show how their employer - Favorite Nurses - failed to take proper remedial action after it learned of the alleged harassment. Once again, even assuming Favorite failed to do so, plaintiffs do not explain how that failure is attributable to defendant.

In their response plaintiffs further contend that they have met their burden of making a *prima facie* case of retaliation pursuant to Title VII, which includes showing that they suffered an adverse employment action and the adverse action occurred because of protected activity. *See Montadon*, 116 F.3d at 359. But as previously stated, there is no dispute that defendant was not plaintiffs' employer and plaintiffs fail to present evidence of an adverse employment action on the part of defendant. Defendant did not and could not lower plaintiffs' wages, change plaintiffs' benefits, or terminate plaintiffs' employment with Favorite Nurses. And there is no evidence indicating defendant asked Favorite to remove plaintiffs from JCCC. Assuming that plaintiffs' employer - Favorite Nurses - took action adversely affecting plaintiffs' employment, Favorite's actions cannot be attributable to defendant.

WHEREFORE, for the foregoing reasons and for the reasons set forth in defendant motion for summary judgment, defendant requests that this Court grant its motion and dismiss plaintiffs claims.

Respectfully submitted,

JEREMIAH W. (JAY) NIXON
Attorney General

/s/ Virginia Hurtubise Murray

VIRGINIA HURTUBISE MURRAY
Missouri Bar No. 48770

SARA TROWER
Missouri Bar No. 48770

Assistant Attorneys General
P.O. Box 899
Jefferson City, Missouri 65102
Phone: (573) 751-3321
Fax: (573) 751-9456

ATTORNEYS FOR DEFENDANT
STATE OF MISSOURI, DEPARTMENT
OF CORRECTIONS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically served this

24th day of July, 2000, to:  Martin Meyers and Stephen C. Thomberry of The Meyers Law Firm,

2850 City Center Square, 1100 Main Street, Kansas City, Missouri 64105-2112.

<u>    /s/ Virginia Hurtubise Murray    </u>
Assistant Attorney General